# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| SILVER VALLEY PARTNERS, LLC, a<br>Washington Limited Liability Company;<br>JAMES D. CHRISTIANSON, an individual;<br>the JAMES D. CHRISTIANSON LIVING<br>TRUST, a Trust formed under the laws of the<br>State of Washington; STERLING PARTNERS,<br>LLC, a Washington Limited Liability<br>Company; CHRISTIANSON FAMILY, LLC, a<br>Washington Limited Liability Company,<br>SILVER VALLEY EAGLES, LLC, a<br>Washington Limited Liability Company and<br>NONSTOP REVENUE, LLC, a Washington<br>Limited Liability Company,<br><br>                    Plaintiffs,<br><br>v.<br><br>RAY DE MOTTE, an Individual; STERLING<br>MINING COMPANY, an Idaho corporation;<br>COHNE RAPPAPORT & SEGAL, a Utah<br>Professional Corporation; MARK LEHMAN,<br>an Individual; ART AND CAROL STEPHAN,<br>husband and wife; SPRING CREEK<br>PROPERTIES, LLC, an Idaho Limited Liability<br>Company,<br><br>                    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 06-429-N-ELJ<br><br><br>**MEMORANDUM DECISION<br>AND ORDER** |

**MEMORANDUM DECISION AND ORDER - 1**

Before the Court in the above-entitled matter are Defendants' Motions to Dismiss and Plaintiffs' Motion for Leave to Amend (Dkt. Nos. 9, 40). The parties have submitted briefing on the motions and the matters are now ripe for the Court's consideration. Having fully reviewed the record herein, the Court finds that the facts and legal arguments are adequately presented in the briefs and record. Accordingly, in the interest of avoiding further delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, the motions shall be decided on the record before this Court without oral argument. Local Rule 7.1(d)(2)(ii).

## BACKGROUND

This case arises out of a series of Plaintiffs' failed investments in various mining enterprises in Northern Idaho in which Defendant Ray De Motte has significant involvement. (W.D. Wash. Docket No. 1-17) (reported as <u>Silver Valley Partners, LLC v. De Motte</u>, 400 F. Supp. 2d 1262 (W.D. Wash. 2005)). It is alleged that Plaintiffs invested over 3.2 million into various businesses that De Motte promoted in the pursuit of what he referred to as his silver revolution. <u>Id.</u> Plaintiffs filed their initial Complaint against Defendants Ray De Motte ("De Motte"), Carol Stephan ("Ms. Stephan"), Melanie Farrand ("Farrand"), and Silver Valley Capital, LLC ("SVC") in Federal District Court for the Western District of Washington (Hon. Ronald B. Leighton). (W.D. Wash. Docket No. 1-3).

The Defendants moved to dismiss for lack of personal jurisdiction. The Washington Court denied the motion to dismiss as to Defendant De Motte but concluded that it did not

have personal jurisdiction over Defendants Ms. Stephan, Farrand, and SVC.  (W.D. Wash. Docket No. 1-17).  As a result, the Washington Court gave Plaintiffs two options either:  1) dismiss Ms. Stephan, Farrand, and SVC and pursue the case solely against Defendant DeMotte or 2) transfer the entire case to Idaho where the Court would have general jurisdiction over each defendant named in the complaint.  Id.  Plaintiffs elected to proceed against Defendant De Motte in the Western District of Washington.  (W.D. Wash. Docket No. 1-21).  Accordingly, the Washington Court granted the motion to dismiss as to Defendants Ms. Stephan, Farrand, and SVC.  Id.

Later, Plaintiffs sought leave to amend and file a First Amended Complaint adding claims against Defendant De Motte, re-pleading claims against Defendant Ms. Stephan and adding Defendants Mr. Art Stephan, Spring Creek Properties, Sterling Mining Company, and the lawyers allegedly involved in the transactions from the firm of Cohne Rappaport & Segal and Mark Lehman.  (W.D. Wash. Docket No. 72).  After some back-and-forth, the Washington Court allowed Plaintiffs to filed their First Amended Complaint ("FAC"). (W.D. Wash. Docket Nos. 79, 80, 85, 112, 113).

Defendant De Motte then filed a motion to change venue and motion to dismiss. (W.D. Wash. Docket Nos. 141, 162).  Defendants Cohne Rappaport & Segal and Mark Lehman filed a motion to dismiss for lack of personal jurisdiction.  (W.D. of Wash. Docket No. 156).  Defendants Ms. Stephan and Art Stephan (collectively "the Stephans") and Spring Creek Properties ("Spring Creek") also filed their own motion to dismiss for lack of personal jurisdiction.  (W.D. Wash. Docket Nos. 164).  On August 24, 2006, Defendant

Sterling Mining Company filed its motion to dismiss for failure to state a claim.  (W.D. Wash. Docket No. 179).

The Washington Court granted Defendant De Motte's motion and transferred the case from the Western District of Washington to the District of Idaho, recognizing Idaho as a more convenient venue.  (W.D. Wash. Docket Nos. 215, 216).  This Order also found as moot Defendants Cohne Rappaport & Segal, Lehman, Stephan and Spring Creek's motions to dismiss for lack of personal jurisdiction.[1] (W.D. Wash. Docket No. 216).

The matter is now pending before this Court.  At this time the Court takes up the motions to dismiss that were unresolved by the Washington Court, the motion to dismiss filed in this case by Defendants Stephans and Spring Creek, and Plaintiffs' second motion to amend.  (Docket No. 9, 40).

## STANDARDS OF LAW

### I.    Motions to Dismiss

The motions to dismiss are made pursuant to Federal Rule of Civil Procedure 12(b)(6).  In considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "all well-pleaded allegations of material fact are taken as true and construed in a light most favorable to the non-moving party."  Wyler Summit P'ship v. Turner Broad. Sys., Inc., 135 F.3d 658, 661 (9th Cir. 1998) (citation omitted).  However, the court does not

---

[1] After the matter was transferred to this Court, on November 10, 2006, Plaintiffs entered a notice of dismissal as to all claims against Defendants Cohne Rappaport & Segal and Mark Lehman.  (Docket No. 15).

necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations in plaintiff's complaint. <u>See</u> <u>Clegg v. Cult Awareness Network</u>, 18 F.3d 752, 754-55 (9th Cir. 1994). There is a strong presumption against dismissing an action for failure to state a claim. <u>See</u> <u>Gilligan v. Jamco Dev. Corp.</u>, 108 F.3d 246, 249 (9th Cir. 1997) (citation omitted). "'The issue is not whether a plaintiff will ultimately prevail but whether [he] is entitled to offer evidence in support of the claims.'" <u>Id.</u> (quoting <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974), *overruled on other grounds by* <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 807 (1982)). Consequently, the court should not grant a motion to dismiss "for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46, (1957); <u>see also</u> <u>Hicks v. Small</u>, 69 F.3d 967, 969 (9th Cir. 1995). A claim is sufficient if it shows that the plaintiff is entitled to any relief which the court can grant, even if the complaint asserts the wrong legal theory or asks for improper relief. <u>See</u> <u>United States v. Howell</u>, 318 F.2d 162, 166 (9th Cir. 1963).

## II.    **Motion for Leave to Amend**

Federal Rule of Civil Procedure 15(a) provides that, once a responsive pleading has been served, a party may amend its pleading "only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). The Ninth Circuit Court of Appeals recognizes that "the underlying purpose of Rule 15 [is] to facilitate [a] decision on the merits, rather than on the pleadings or technicalities," and, therefore, "Rule 15's policy of favoring amendments to pleadings should

be applied with 'extreme liberality.'"  <u>United States v. Webb</u>, 655 F.2d 977, 979 (9th Cir. 1981).

The decision whether to grant or deny a motion to amend pursuant to Rule 15(a) rests in the sole discretion of the trial court.  <u>Id.</u>  The Court may decline to grant a Rule 15(a) motion for leave to amend if amendment would cause the opposing party undue prejudice, is sought in bad faith, or would constitute an exercise in futility.  <u>DCD Programs, Ltd. v. Leighton</u>, 833 F.2d 183,186 (9th Cir. 1987).  Thus, the four factors that are commonly used to determine the propriety of a motion for leave to amend are:  bad faith, undue delay, prejudice to the opposing party, and futility of amendment.  <u>Id.</u>

However, "[t]hese factors . . . are not of equal weight in that delay, by itself, is insufficient to justify denial of leave to amend."  <u>Id.</u>; <u>see also Webb</u>, 655 F.2d at 979 ("The mere fact that an amendment is offered late in the case is . . . not enough to bar it."); <u>Bowles v. Beade</u>, 198 F.3d 752, 758 (9th Cir. 1999).  Further, the Ninth Circuit has held that although all these factors are relevant to consider when ruling on a motion for leave to amend, the "crucial factor is the resulting prejudice to the opposing party."  <u>Howey v. United States</u>, 481 F.2d 1187, 1189 (9th Cir. 1973).  Indeed, prejudice is the touchstone of the inquiry under Rule 15(a).  <u>Eminence Capital, LLC v. Aspeon, Inc.</u>, 316 F.3d 1048, 1052 (9th Cir. 2003).  Ultimately, "[u]nless undue prejudice to the opposing party will result, a trial judge should ordinarily permit a party to amend its complaint."  <u>Howey</u>, 481 F.2d at 1190.

## DISCUSSION

## I.    <u>Defendants' Motions to Dismiss</u>

MEMORANDUM DECISION AND ORDER - 6

Defendants Sterling and DeMotte filed motions to dismiss the complaint before the Western District of Washington which were not ruled upon prior to the case being transferred to this District.  Defendants Stephan and Spring Creek have joined in Sterling's motion and filed their own motion to dismiss on similar grounds. Both motions assert dismissal of Plaintiffs' claims is appropriate because the FAC has failed to state a cause of action upon which relief can be granted.[2]  Plaintiffs oppose the motions arguing the allegations are sufficient to state claims for relief and, alternatively, the Court should grant Plaintiffs a second opportunity to amend the complaint to cure any defects.

The FAC raises several claims against the named Defendants.  Most of the claims name De Motte and also specifically name certain of the other Defendants: 1. Fraud; 2. Conversion against Sterling; 3. Breach of Fiduciary Duty; 4. Conversion against the Stephans and Spring Creek; 5. Breach of Contract; 6. Violation of Idaho Securities Law against Sterling; 7. Violation of Washington Securities Law against Sterling; 8. Violation of Idaho Racketeering Law Count I against Sterling and Count II against the Stephans; 9. Constructive Trust against Sterling and the Stephans; 10. Accounting against Sterling and the Stephans; 11. Violation of Washington Consumer Protection Act against all Defendants; and 12. Money had and Received against only the Stephans.[3]

---

[2]  The Stephens and Spring Creek do not seek dismissal of the conversion claim against them; the Fourth Claim for Relief.  (Dkt. No. 9, p. 2).  Sterling, however, does seek dismissal of the conversion claim against it; the Second Claim for Relief.

[3]

This listing of the claims for relief from the First Amended Complaint assumes Defendant De Motte is named in each of the claims and specifies only those other Defendants as are applicable to the motions taken up in this order.  The only exceptions are Claim One for Fraud is not specified as it has several counts and Claim

**MEMORANDUM DECISION AND ORDER - 7**

A.    Fraud Claims:

The elements of a fraud claim include: "(1) a statement or a representation of fact; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity; (5) the speaker's intent that there be reliance; (6) the hearer's ignorance of the falsity of the statement; (7) reliance by the hearer; (8) justifiable reliance; and (9) resultant injury." Mannos v. Moss, 155 P.3d 1166, 1170 (Idaho 2007) (citing Trees v. Kersey, 56 P.3d 765, 772 (2002)); Kirkham v. Smith, 23 P.3d 10, 13 (Wash. App. 2001).  Federal Rule of Civil Procedure 9(b) states: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."  "To comply with Rule 9(b), allegations of fraud must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." Bly-Magee v. California, 236 F.3d 1014, 1019 (9th Cir. 2001) (citation, quotations omitted).

"[T]here is no absolute requirement that where several defendants are sued in connection with an alleged fraudulent scheme, the complaint must identify false statements made by each and every defendant.  Participation by each conspirator in every detail in the execution of the conspiracy is unnecessary to establish liability, for each conspirator may be performing different tasks to bring about the desired result." Swartz v. KPMG LLP, 476 F.3d 756, 765 (9th Cir. 2007) (citation omitted) "On the other hand, Rule 9(b) does not allow a complaint to merely lump multiple defendants together but requires plaintiffs to

---

Twelve that does not name Defendant De Motte; only the Stephans are the subject of Claim Twelve.

differentiate their allegations when suing more than one defendant ... and inform each

defendant separately of the allegations surrounding his alleged participation in the fraud.  In

the context of a fraud suit involving multiple defendants, a plaintiff must, at a minimum,

identify the role of each defendant in the alleged fraudulent scheme."  Id. at 765-766

(citations and quotations omitted).

Here, Defendants are correct that the complaint fails to comply with Rule 9(b)'s

particularity requirements.  The complaint contains many generalized allegations of

misrepresentations and omissions upon which Plaintiffs claim they relied in purchasing

stocks.  In certain instances the complaint draws distinctions between some of the named

Defendants.  As to Sterling, however, the allegations are much too generalized to satisfy the

requirements of Rule 9(b).[4]  In particular, the allegations that Sterling "knew that DeMotte,

in soliciting additional investment in Sterling outside the confines of the PPM, knew that

DeMotte was not disclosing the existence or impact of the Partial Consent Decree, that he

was purposefully misrepresenting Sterling's royalty obligations and that he was otherwise

concealing material facts regarding any investment in Sterling."  (WA Dkt. No. 91, p. 63).

Conclusory allegations that Sterling knew DeMotte was making false representations and that

Sterling knew as much without any stated factual basis is insufficient as a matter of law.  See

Swartz, 476 F.3d at 766.  This allegation is critical to any claim that Sterling is liable for

fraud in this case.  The FAC is significantly lacking in any particularity as to the identity and

role of the actors involved in each of the allegations; such as allegations relating to who made

---

[4] Sterling is named in only Counts One, Two, and Three of the Fraud Claim for Relief.

MEMORANDUM DECISION AND ORDER - 9

what statements, to whom were the statements made, how/why were the statements false or fraudulent, and from whom Plaintiffs purchased securities.[5]  Id.  On this basis, the Court finds the motion to dismiss as to the common law fraud claim raised against Sterling must be granted.

That being said, the Court will grant Plaintiffs leave to file their second and final amended complaint in this matter.  In reviewing the record in this case, the Court cannot say at this time that this error in pleading could not be cured by the allegation of other facts which Plaintiffs claim to exist.  As such it is appropriate for the Court to grant Plaintiffs' request to amend.  The Court recognizes the hardship in which this places the parties in this matter and notes that such considerations may find relief, if appropriate, at a later time through an award of attorney fees and/or costs.  The Defendants have asked that if the request to amend is granted that the Court provide instruction as to what is required of Plaintiffs in filing their pleadings in this matter.  The Court will not advise any party in this matter in such a fashion except to say that this is Plaintiffs' final opportunity to amend their complaint and cure any and all defects therein.

As to DeMotte, he too argues that the FAC fails to plead the fraud claim with particularity; pointing to the generalized nature of the alleged facts and the lack of any particulars as to who, what, where, when, and why the allegations amount to fraud.  In addition, DeMotte asserts the alleged fraudulent statements were not statements of fact but

---

[5]  This is by no means an exhaustive list but merely an example of the type of particularized allegations that are lacking in the FAC.

**MEMORANDUM DECISION AND ORDER - 10**

mere puffery.   Having reviewed the complaint and the parties arguments the Court finds that the FAC contains what appears to be the basic theory of Plaintiffs' fraud claim against DeMotte and includes particular allegations of misstatements that Plaintiffs claim to have relied upon.   Noticeably absent from the fraud claim, however, are particularized allegations of what was fraudulent about the misstatements.   Simply asserting that something was promised and never happened or that the Defendants never intended for something to happen does not satisfy the particularity requirement of Rule 9.   How these statements amount to fraud is unclear from the allegations in the FAC.   In addition, as noted above, the FAC is extremely lacking in particularity as to the identity of who was involved and to what extent they were involved in the various misstatements alleged to have been made.   Accordingly, the Court will grant DeMotte's motion to dismiss as to the fraud claim but, as noted above, the Plaintiffs will be granted leave to amend their complaint.

      B.   <u>Racketeering Claims</u>:

      The Eighth Claim for Relief alleges two counts of violations of Idaho's racketeering law against the Defendants.   Defendants again argue the claims are not plead with particularity.   Defendants also argue the racketeering claims should be dismissed because they fail to state the requisite elements for a racketeering cause of action.   In Idaho, "racketeering" means any act chargeable under the enumerated list of predicate acts in Idaho Code § 18-7803(a)(1)-(21).   Idaho prohibits four types of racketeering activities:

> (a) It is unlawful for any person who has received any proceeds derived directly or indirectly from a pattern of racketeering activity in which the person has participated, to use or invest, directly or indirectly, any part of the

**MEMORANDUM DECISION AND ORDER - 11**

proceeds or the proceeds derived from the investment or use thereof in the acquisition of any interest in, or the establishment or operation of, any enterprise or real property. Whoever violates this subsection is guilty of a felony.

(b) It is unlawful for any person to engage in a pattern of racketeering activity in order to acquire or maintain, directly or indirectly, any interest in or control of any enterprise or real property. Whoever violates this subsection is guilty of a felony.

(c) It is unlawful for any person employed by or associated with any enterprise to conduct or participate, directly or indirectly, in the conduct of the affairs of such enterprise by engaging in a pattern of racketeering activity. Whoever violates the provisions of this subsection is guilty of a felony.

(d) It is unlawful for any person to conspire to violate any of the provisions of subsections (a) through (c) of this section. Whoever violates the provisions of this subsection is guilty of a felony.

Idaho Code § 18-7804.  In this case, the Plaintiffs raise claims under subsections (b), (c) and (d).

        1)    <u>Pattern of Racketeering</u>:

All of the Defendants argue the claims under both subsections (b) and (c) fail because there are no facts alleged demonstrating a "pattern of racketeering." A "pattern of racketeering" is defined as:

engaging in at least two (2) incidents of racketeering conduct that have the same or similar intents, results, accomplices, victims or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated incidents, provided at least one (1) of such incidents occurred after the effective date of this act and that the last of such incidents occurred within five (5) years after a prior incident of racketeering conduct.

Idaho Code § 18-7803(d).  "A single scheme may be sufficient to establish a pattern of

MEMORANDUM DECISION AND ORDER - 12

racketeering if the plaintiff establishes 'that the predicate acts themselves amount to, or constitute a threat of, *continuing* racketeering activity.'" <u>Mannos</u>, 155 P.3d at 1174-75 (quoting <u>Spence v. Howell</u>, 890 P.2d 714, 726 (Idaho 1995) (emphasis in original)).  To prevail on a racketeering claim, plaintiffs must "prove both the existence of an 'enterprise' and a connected 'pattern of racketeering activity.'" <u>Id.</u> (citation omitted).[6]

Defendants argue that the predicate acts alleged in the FAC fail to amount to or constitute a "pattern of racketeering" because they do not contain a threat of continuing racketeering activity and the Plaintiffs' claims only allege a single scheme of fraudulent conduct against Plaintiff Christianson and no other victims.  Plaintiffs dispute whether continuity is required in Idaho but argue the FAC contains sufficient allegations as to the scheme engaged in by the Defendants which involved multiple crimes and victims sufficient to meet the continuity requirement.  In particular Plaintiffs point to three separate bases for the alleged pattern of racketeering: 1) the length of time, sixteen months, 2) the alleged activities became the Defendants' regular way of doing business; and 3) there was a  threat of continuing activity.  Defendants dispute the argument that there were multiple victims because the only contact by Defendants alleged in the FAC is through the Plaintiff Christianson, not the closely-held entities which Christianson controlled.

---

[6]

"Enterprise" means any sole proprietorship, partnership, corporation, business, labor union, association or other legal entity or any group of individuals associated in fact although not a legal entity, and includes illicit as well as licit entities.  Idaho Code § 18-7803(c).  Idaho Courts have recognized "three elements to establish an enterprise for racketeering purposes[:]  1) a common or shared purpose; 2) continuity of structure and personnel; and 3) an ascertainable structure distinct from the inherent conduct of the pattern of racketeering activity itself."  <u>State v. Hansen</u>, 877 P.2d 898, 891 (Idaho 1994) (citations omitted).

**MEMORANDUM DECISION AND ORDER - 13**

"To prove a pattern of racketeering activity, a plaintiff must show that the racketeering predicates are related and that they amount to, or pose a threat of, a continued criminal activity." Eliopulos v. Knox, 848 P.2d 984, 991 (Idaho App. 1992) (citing H.J. Inc., v. Northwestern Bell Tel. Co., 492 U.S. 229, 239 (1989); Ticor Title Ins. Co. v. Florida, 937 F.2d 447, 450 (9th Cir. 1991)).  Idaho courts have recognized that in order to show a "pattern of racketeering" where the plaintiffs had "alleged but one general scheme of 'racketeering,' the purpose and plan of which was to induce the plaintiffs to either enter into various loan arrangements or to defraud the plaintiffs, "the plaintiff must show that the predicate acts themselves amount to, or constitute a threat of, continuing racketeering activity." Eliopulos, 848 P.2d at 992; Spence v. Howell, 890 P.2d 714, 726 (Idaho 1995) (citations omitted); see also Mannos, 155 P.3d at 1174-75.  Though Plaintiffs attempt to distinguish this case from Eliopulos and Spence, where the Courts found no fraud, the fact remains that in Idaho a "pattern of racketeering" requires the plaintiff to establish "that the predicate acts themselves amount to, or constitute a threat of, *continuing* racketeering activity." Mannos, 155 P.3d at 1175 (quoting Spence, 890 P.2d at 726 (emphasis in original)).  This standard is not met here.

Plaintiffs allege the pattern of racketeering involved multiple transactions and courses of varied criminal misconduct affecting multiple victims presenting more than a single scheme.  In addition, Plaintiffs argue the racketeering is continuing because the Defendants are covering up their fraudulent activities, the length of time, the fraud became the Defendants' regular way of doing business, and there is a threat of continuing activity.  The lack of specificity in Plaintiffs' racketeering allegations is telling and terminal to the claims.

**MEMORANDUM DECISION AND ORDER - 14**

The allegations paint with a wide brush with little in the way of specific facts making up a pattern of racketeering activity.  At best, the allegations, if true, paint the picture of a single scheme to defraud.  However, the generalized claims in the FAC fail to provide factual allegations of an "enterprise" let alone that the enterprise had engaged in a "pattern of racketeering."  Moreover, beyond merely asserting that the pattern continues, the Plaintiffs have not alleged facts which would go to show that any racketeering activity is continuing or why/how there is a threat of such activities continuing.  The allegation of a "cover-up" contains no facts upon which the allegation can be substantiated.  Accordingly the Court will grant the Defendants' motions to dismiss.

2)    <u>Subsection (d)</u>:

Because the claims under both subsections (b) and (c) fail, Defendants argue that Plaintiffs' claims under subsection (d) also fails.  In addition, Defendants argue the claims under subsection (d) fails because no conspiracy or agreement between the Defendants has been alleged; nor could such an agreement be alleged because a corporation cannot conspire with its own directors and officers.  Plaintiffs argue the substantive violations of subsections (b) and (c) are proper and, therefore, the claims under subsection (d) is also proper.  In addition, Plaintiffs note that because Sterling can still be liable for the subsection (b) and (c) claims as to the acts of DeMotte who Plaintiffs allege is Sterling's coconspirator.  To this end, Plaintiffs maintain that a conspiracy between a corporation and its representative can lie under the facts of this case and that the pleading sufficiently details DeMotte and other Sterling representatives' racketeering actions were done in concert and, therefore, there was

MEMORANDUM DECISION AND ORDER - 15

an agreement and/or conspiracy to engage in racketeering.

Because Plaintiffs failed to allege the requisite substantive elements of a racketeering claim, their subsection (d) claims, which makes it "unlawful for any person to conspire to violate any of the provisions of subsections (a) through (c) of this section," also fail. Turner v. Cook, 362 F.3d 1219, 1230 n. 17 (9th Cir. 2004); see also Religious Technology Ctr. v. Wollersheim, 971 F.2d 364, 367 n. 8 (9th Cir. 1992) (per curiam) (concluding that conspiracy claim under subsection (d) failed because plaintiff failed to allege substantive elements of RICO claim).

C.    Securities Laws Claims:

Defendants again assert that the complaint is not sufficiently particular as to the claims plead under Washington and Idaho's Securities Acts and that the complaint fails to allege losses related to stock purchased from Sterling.  Plaintiffs contend that the Defendants violated the Idaho Securities Act, Idaho Code § 30-1-509, by offering and selling securities to Plaintiffs in various entities "by means of untrue statements of material fact and/or omissions to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, the Plaintiffs being purchasers not knowing of the untruths or omissions." (Dkt. No. 91, p. 82). Plaintiffs allege Defendants violated the Washington Securities Act, RCQ 20.010, by offering and selling securities to Plaintiffs by: a) means of untrue statements to Plaintiffs of material facts necessary in order to make the statements made to Plaintiffs not misleading in light of the circumstances in which they were made, and/or b) engaging in actions, practices and/or

MEMORANDUM DECISION AND ORDER - 16

courses of business which operated as a fraud or deceit upon Plaintiffs.

Idaho Code § 30-14-509 provides for civil liability of a seller for selling in violation of Idaho Code § 30-14-501, which states that in connection with the sale of a security, it is unlawful to:  1) to employ a device, scheme, or artifice to defraud; 2) to make an untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or 3) to engage in an act, practice, or course of business that operates or would operate as a fraud or deceit upon another person.  Similarly, Washington's Securities Act prohibits certain fraudulent practices involving the sale of securities (RCQ 21.20.010-035) and establishes civil liability for any person who 'offers or sells' securities through fraud, misrepresentation or by omitting material facts.  RCQ 21.20.430(1).  RCQ 21.20.430(1) provides that: "Any person, who offers or sells a security in violation of any provisions of RCQ 21.20.010, 21.20.140(1) or (2), or 21.20.180 through 21.20.230, is liable to the person buying the security from him or her...."  Thus, liability is imposed on the literal seller of a security who passes title directly to another (direct privity).  Where direct privity is lacking, however, the question becomes who is a "seller" of securities.

Whether Defendants are "sellers" of securities here, is the threshold question for both the Idaho Securities Act and the Washington Securities Act claims in this case.  Each state has adopted a different test to define the term "seller."  Idaho employs the financial benefit test which "defines a seller of securities as one who is motivated by pecuniary gain. This definition extends to 'the person who solicits the purchase, motivated at least in part by

**MEMORANDUM DECISION AND ORDER - 17**

desire to serve his own financial interests or those of the securities owner.'" <u>Meyers v. Lott</u>, 993 P.2d 609, 612-13 (Idaho 2000) (citing <u>Pinter v. Dahl</u>, 486 U.S. 622, (1988)).  In adopting this test the Idaho Supreme Court stated "The financial benefit test offers courts a clear line in deciding whether an individual meets the definition of a seller under the Idaho Securities Act, while at the same time offering adequate protection to investors."  <u>Id.</u>

Washington, on the other hand, has adopted the substantial factor test which holds a defendant is liable as a seller if "his acts were a substantial contributive factor in the sales transaction."  <u>Herrington v. David D. Hawthorne, CPA, P.S.</u>, 47 P.3d 567, 570-71 (Wash. App. 2002) (quoting <u>Haberman v. Washington Public Power Supply System</u>, 744 P.2d 1032 (1987)).[7]  "Thus, liability under the WSSA is not limited to one who sells securities. Rather, one may be liable as a seller under the statute if one's acts were a 'substantial contributive factor' in the sales transaction."  <u>Id.</u>  In <u>Haberman</u>, the court named three considerations in determining whether a person's conduct is a substantial contributive factor in a sales transaction:  1) the number of other factors which contribute to the sale and the extent of the effect which they have in producing it; 2) whether the defendant's conduct has created a force or series of forces which are in continuous and active operation up to the time of the sale, or has created a situation harmless unless acted upon by other forces for which the actor is not responsible; and 3) lapse of time.  <u>Id.</u>  The court does not limit the inquiry to whether one

_____

[7] This "is a broad test which allows individuals to be classified as sellers when their acts are deemed to be a substantial factor in bringing about the particular securities violation. The states which have utilized the substantial factor test have been motivated by a desire to protect as many investors as possible."  <u>Meyers</u>, 993 P.2d at 613.

**MEMORANDUM DECISION AND ORDER - 18**

'offers or sells' the securities.  Under the substantial contributive factor test, direct contact between seller and buyer is not required.  The test turns not on privity but on whether the defendants are persons who substantially contributed to a transaction for the sale of stock. Id.  In Haberman, the Court emphasized that the substantial contributive factor analysis: expands the strict privity approach to sellers so as to include those parties who have attributes of a seller and thus who policy dictates should be subject to liability under RCQ 21.20.430(1), but who would escape liability for want of privity.

Plaintiffs' arguments under these claims, as well as the Defendants' defenses, mirror their arguments and defenses with respect to the common law fraud claim.  The parties agree that the initial 75,000 shares of Sterling stock were purchased directly from Sterling. Plaintiffs maintain that a second later purchase of $1,180,000 of Sterling stock was also directly from Sterling; Plaintiffs seek leave to amend their complaint to add this allegation if necessary.  Plaintiffs therefore argue that because Sterling received a pecuniary gain from Plaintiffs' stock purchases which were induced by omissions and misrepresentations made by Sterling through DeMotte.[8]  Sterling argues that these other transactions were not alleged in the complaint and the sales of securities alleged aside from the initial 75,000 shares relate to other Defendants, not Sterling.  As to the sale of the 75,000 shares, Sterling maintains that there were no material misstatements or omissions in the PPM in connection with that purchase.  Sterling points out that all of the allegations of promises made by DeMotte and

---

[8]  The Court notes that as to the claim for relief under the Idaho Securities Law (Sixth Claim for Relief) it does not include the allegation that Sterling acted "through" DeMotte as is alleged in the Washington' Securities Law claim (Seventh Claim for Relief) (WA Dkt. No. 91).

MEMORANDUM DECISION AND ORDER - 19

others occurred after the initial purchase and, therefore, only the alleged misrepresentations in the PPM are relevant.  In addition, Sterling argues Plaintiffs have not plead compensable damages as they seek recovery for amounts they would have made had they invested in other securities; here, Sterling argues Plaintiffs made money on their investment and, therefore, suffered no damages.

As to Sterling the Court finds that Plaintiffs have failed to allege facts sufficient to deem Sterling a "seller" under either the Idaho or Washington Securities Acts.  As to the Idaho Securities Law (Sixth Claim for Relief), the FAC does not include the allegation that Sterling acted "through" DeMotte as is alleged in the Washington' Securities Law claim (Seventh Claim for Relief).  (WA Dkt. No. 91, pp. 82, 83).  In addition, the FAC allegations fail to plead facts which demonstrate that Sterling was a seller of any securities other than the initial 75,000 shares Plaintiffs purchased.  The allegations regarding the other securities sales relate to DeMotte as the seller.  Accordingly, the Court will grant Sterling's motion to dismiss as to both the Idaho and Washington Securities Act claims to all securities sales with the exception of the initial 75,000 share sale.  As to that sale, Sterling's argument that there were no misrepresentations in the PPM is not a question properly resolved on a motion to dismiss.  Here the Court must take the Plaintiffs' allegations about the PPM as true. Accordingly, that particular allegation survives the motion to dismiss.

In his motion, DeMotte argues there are no allegations that he was a seller of securities in connection with the other entities that Plaintiffs alleged they invested in through DeMotte.  Simply, DeMotte contends that he was not a seller of securities nor a controlling

MEMORANDUM DECISION AND ORDER - 20

person in any of the given transactions nor received any financial benefit from Plaintiffs'

purchases of securities from third parties, including the open market.  In their opposition,

Plaintiff's point to particular checks given to DeMotte on behalf of NW Miners and other

instances of Plaintiff investing in other entities at DeMotte's direction. (WA Dkt. No. 91).

This, Plaintiffs argue, evidences that DeMotte was a substantial contributing factor to

Plaintiffs' purchases.  Alternatively, Plaintiffs argue DeMotte was a control person in these

other entities and if not deemed a seller is still secondarily liable.

There is also a possibility of secondary liability under the Washington Securities Act.

RCQ 21.20.430(3) provides in relevant part that:

> Every person who directly or indirectly controls a seller or buyer liable under
> subsection (1) or (2) above, every partner, officer, director or person who
> occupies a similar status or performs a similar function of such seller or buyer,
> every employee of such a seller or buyer who materially aids in the
> transaction, and every broker-dealer, salesperson, or person exempt under the
> provisions of RCQ 21.20.040 who materially aids in the transaction is also
> liable jointly and severally with and to the same extent as the seller or buyer,
> unless such person sustains the burden of proof that he or she did not know,
> and in the exercise of reasonable care could not have known, of the existence
> of the facts by reason of which the liability is alleged to exist.

Idaho Code § 30-14-509(g)(3) also holds liable those persons who are "associated with" a

seller liable.

The Court finds the FAC has alleged facts sufficient to prove, if true, that DeMotte

was a seller of securities for the listed entities.  Accordingly, DeMotte's motion to dismiss

the Idaho and Washington Securities Acts claims is denied.  The Court also finds the facts

alleged in the FAC are sufficient to state a claim against DeMotte for secondary liability

**MEMORANDUM DECISION AND ORDER - 21**

under both the Idaho and Washington Securities Acts.  Plaintiffs argues Sterling is also liable on this secondary liability theory via its association with DeMotte.  This argument fails as to the Idaho Securities Act because Plaintiffs failed to allege that Sterling acted "through" DeMotte.  As to both the Idaho and Washington Securities Act, the FAC lacks sufficient particularity to Sterling's involvement and relationship between Sterling and DeMotte.

        D.      <u>Washington Consumer Protection Act</u>:

The Eleventh Claim for Relief alleges violation of the Washington Consumer Protection Act against all Defendants arguing that "Defendants have engaged in, and/or materially aided, unfair and/or deceptive practices in the conduct of trade or commerce in violation of RCQ 19.86.020...."  (Dkt. No. 91, p. 94).  In Washington, "[t]here are five elements of a CPA claim: (1) an unfair or deceptive act or practice that; (2) occurs in trade or commerce; (3) impacts the public interest; (4) causes injury to the plaintiff in her business or property; and (5) the injury is causally linked to the unfair or deceptive act."  <u>Michael v. Mosquera-Lacy</u>, 165 P.3d 43, 47 (Wash. App. 2007) (citation omitted); <u>see also</u> Wash. Rev. Code § 19.86 (2006).  Here, Defendants argue the Plaintiffs have failed to allege the elements of 1) unfair or deceptive act or practice and 2) an impact on the public interest.

"The CPA's purpose is to protect the public and foster fair and honest competition. RCQ 19.86.920.  It is, however, the legislature's intent that the CPA shall not be construed to prohibit acts or practices that do not injure the public interest.  RCQ 19.86.920.  The CPA's purpose is to protect the public, not to provide an additional remedy for private wrongs."  <u>Michael</u>, 165 P.3d at 50 (citation omitted).  Determining "whether the public has

MEMORANDUM DECISION AND ORDER - 22

an interest in any given action from several factors, and which factors the fact finder considers depends on whether the transaction was essentially a 'consumer' transaction or a 'private' transaction." Id. (citation omitted). "If the transaction was essentially a consumer transaction, the trier of fact should consider whether (1) the alleged acts were committed in the course of defendant's business; (2) the acts were a part of a pattern or generalized course of conduct; (3) repeated acts were committed before the act involving the plaintiff; (4) there is a real and substantial potential for repetition of defendant's conduct; and (5) the act complained of involved a single transaction, or many consumers." Id. "If the transaction was essentially a 'private' dispute ... it might be more difficult to establish that the public has an interest because, ordinarily, a breach of a private contract affecting no one but the parties to the contract is not an act or practice affecting the public interest. However, if it is likely that additional plaintiffs have been or will be injured in exactly the same fashion as the private plaintiff, a private dispute enters the realm of the public interest." Id.

"If a transaction is essentially a private dispute, the trier of fact should consider whether (1) the alleged acts were committed in the course of defendant's business; (2) the defendant advertised to the public in general; (3) the defendant actively solicited the particular plaintiff; and (4) the plaintiff and defendant occupy unequal bargaining positions. The likelihood that additional plaintiffs have been or will be injured in exactly the same fashion changes a factual pattern from a private dispute into one that affects the public interest." Id.

No one of these factors is dispositive and not all factors need to exist in order for a

MEMORANDUM DECISION AND ORDER - 23

transaction to demonstrate public interest. "The factors in both the "consumer" and "private dispute" contexts merely represent the indicia of an effect on public interest from which a trier of fact could reasonably find an impact on the public interest. They need not all exist to demonstrate public interest." Id.

Here, Defendants assert the FAC does not allege the public trust element. Plaintiffs argue the FAC alleges not only a private dispute but also a "course of conduct by Sterling and DeMotte having the capacity to deceive the State of Washington public and others" by registering in Washington under Regulation D to market securities to Washington residents and a recent Form 10 filings have the "capacity to deceive Washington and other investors." To this, Defendants point out that Plaintiffs fail to allege any misleading statement or omission in Sterling's securities filings or in any other circulation to Washington investors. The Court concludes that the Plaintiffs' allegations fail to demonstrate any impact on the public interest. Simply having contact with a citizen of Washington and filing securities related documents with the state is not the kind of activity that the Washington Consumer Protection Act considers as impacting the public interest. In considering the factors noted above, the Court concludes that the wrongful conduct alleged in this case does not involve acts or practices that injured or will injure the public. The Plaintiffs allegations point to the Defendants misrepresentations to these particular Plaintiffs, all of whom are essentially created, controlled, or managed by the same person. The damages alleged are limited to these Plaintiffs. Aside from the Plaintiffs unsubstantiated allegation in response to these motions that the Defendants are "covering up" their misconduct, there is no indication that

**MEMORANDUM DECISION AND ORDER - 24**

the wrongdoings alleged here ever did or ever will enter the public realm.  Accordingly, the Court will grant the motions to dismiss as to this claim.

In addition, the Court can find no facts upon which the Plaintiffs could allege such claim.  The FAC has no allegations that the alleged wrongful acts of the Defendants and the related entities operated in the public realm.  Just the opposite, the facts in the FAC allege that the Defendants misrepresentations were made directly to Plaintiffs, not the public. Accordingly, this claim is dismissed and Plaintiffs will not be granted leave to amend this claim.

        E.        <u>Accounting and Constructive Trust Claims</u>:

Defendants challenge these claims for equitable relief arguing Plaintiffs have no causes of action upon which such relief can be granted and there are no facts to support such an award of relief.  Plaintiffs argue these equitable remedies are available to them because at trial they will be able to trace funds that they allege belong to them but are still in the Defendants' possession.  In light of the Court's rulings above and its decision to allow Plaintiffs the opportunity to amend, the Court will deny the motion to dismiss as to these arguments.

**II.**    <u>**Plaintiff's Motion for Leave to File Second Amended Complaint**</u>

Plaintiffs seek an Order granting leave to file a Second Amended Complaint.  (Dkt. No. 40-4).  Specifically, Plaintiffs wish to amend their FAC by 1) adding additional parties that could not have been previously included as defendants due to lack of jurisdiction in the previous venue and 2) add new claims against Defendants Ms. Stephan, Spring Creek, and

MEMORANDUM DECISION AND ORDER - 25

Sterling Mining Company.  Defendants oppose Plaintiffs' motion citing as reasons both prejudice and undue delay.

On November 15, 2006, this Court entered a Litigation Order, ordering the parties to (among other things) 1) meet and determine A) a joint litigation plan, B) if consenting to the jurisdiction of a magistrate judge is appropriate, and C) if the case is suitable for ADR; and 2) on or before January 10, 2006, the parties shall file a joint litigation plan, and, if appropriate consent to proceed before a magistrate judge.  (Docket No. 27).  On January 11, 2007, in the Joint Litigation Plan, Plaintiffs expressed an intention to establish a new deadline for amending claims and adding parties; undoubtedly due to the issues raised in the motions to dismiss.  (Dkt. No. 38).  On March 7, 2007, Plaintiffs filed a motion with the Court for an order allowing the filing of Plaintiffs' Second Amended Complaint to which Defendants Stephans and Spring Creek Properties, and Defendants De Motte and Sterling Mining Company each filed separate oppositions to Plaintiffs' motion.  (Docket Nos. 42, 43).

Defendants assert that allowing Plaintiffs to amend their complaint at this juncture, and possibly avoid the pending Rule 12(b)(6) motions, would prejudice Defendants since Defendants have already expended nearly $180,000.00 in bringing their multiple motions to dismiss FAC.  (Dkt. Nos. 42, 43).  Additionally, Defendants assert that they would have to incur unwarranted additional expenses to bring similar motions if Plaintiffs are permitted to file their proposed SAC.  (Dkt. Nos. 42, 43).  Defendants also argue that Plaintiffs have filed this motion in an attempt to avoid (as a means of delay) dismissal of its actions against Defendants on pending motions to dismiss.  (Dkt. Nos. 42, 43).  Morever, Defendants

MEMORANDUM DECISION AND ORDER - 26

contend that the deadline for adding parties and claims passed a year ago, and that Plaintiffs have already once been granted leave to amend to add claims and defendants. In Defendants' view, Plaintiffs have not offered any justification for their delay in seeking this relief.

The Court looks with disfavor upon the Plaintiffs' mode of operation in this case of filing a cursory pleading and then responding to motions to dismiss with repeated arguments that more information can be alleged if necessary in an amended complaint. The pleading requirements, particularly in a fraud case, were not promulgated to allow a pleading party to take repeated bites at the apple and eventually file a proper pleading. If the Plaintiffs have particularized facts to support their claims, as they continue to assert in their responses, the Plaintiffs must include those facts in their pleadings. Based on the Plaintiffs numerous assertions that they are in possession of additional facts to prove their claims, the Court will allow Plaintiffs to file a second amended complaint. The Court acknowledges the Defendants' concerns and notes that such issues may be resolved at a later time, if appropriate, upon an award of attorney fees and/or costs.

Though the Plaintiffs have submitted a proposed Second Amended Complaint, the Court encourages Plaintiffs to consider the issues raised in Defendants' motions and the Court's rulings in this order and modify their submission including any and all facts, allegations, and supporting documentation as necessary to substantiate their claims. Plaintiffs are hereby on notice that this is their final opportunity to cure any and all defects in their complaint; continuing to respond to motions to dismiss by arguing additional facts are available will no longer be considered a basis for overcoming a motion to dismiss. As

**MEMORANDUM DECISION AND ORDER - 27**

such, Plaintiffs shall file their Second Amended Complaint on or before October 31, 2007.

Defendants shall have until on or before December 29, 2007 in which to file any motions to

dismiss to the Second Amended Complaint.


## ORDER

Based on the foregoing and being fully advised in the premises, the Court HEREBY

ORDERS as follows:

1.  Defendant Sterling Mining Company's Motion to Dismiss (WA Dkt. No. 179) is **GRANTED IN PART AND DENIED IN PART**.

2.  Defendant DeMotte's Motion to Dismiss (WA Dkt. No. 162) is **GRANTED IN PART AND DENIED IN PART**.

3.  Defendants Art and Carol Stephan and Spring Creek Properties, LLC's, Motion to Dismiss (Dkt. No. 9) is **GRANTED IN PART AND DENIED IN PART**.

4.  Plaintiffs' Motion to Amend (Dkt. No. 40) is **GRANTED IN PART AND DENIED IN PART**.  Plaintiffs may file their Second Amended Complaint in this matter on or before **October 31, 2007** as to all claims except the claim made under the Washington Consumer Protection Act, which is dismissed.

5.  Any Motions to Dismiss by the Defendants shall be filed on or before **December 29, 2007**.

**MEMORANDUM DECISION AND ORDER - 28**

6.      After considering this order and the Plaintiffs' Second Amended Complaint, the
parties are directed to confer and file a joint proposal as to the discovery and expert
witness disclosure deadlines on or before **November 12, 2007**.

DATED:  **September 24, 2007**

Honorable Edward J. Lodge
U. S. District Judge

**MEMORANDUM DECISION AND ORDER - 29**